UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Jose Maisonet,

                              Petitioner,

        - against -

James Conway,

                              Respondent.

----------------------------------------X

CV-04-2860
(CPS)

MEMORANDUM
OPINION AND
ORDER

SIFTON, Senior Judge

        Petitioner Jose Maisonet was convicted on June 29, 1999 on
one count of first degree robbery and one count of second degree
robbery in New York Supreme Court, Queens County[1] and is
currently incarcerated in the Clinton correctional facility in
New York as a result of that conviction.  Petitioner brings this
petition for habeas corpus pursuant to 28 U.S.C. § 2254 alleging
that he received ineffective assistance of counsel at his trial
and on appeal, and that he was denied due process of law when his
trial proceeded in his absence.  For the reasons stated below,
Petitioner's application is denied.


                            **Background**

        The following facts are taken from the parties' submissions,
including the record of Petitioner's state court proceedings.

        In December, 1998, Petitioner was charged in Queens County,
New York with robbery in the first degree, robbery in the second

---

[1] Petitioner was also convicted on one count of first degree burglary,
but that conviction was later overturned on appeal.

degree, burglary in the first degree, attempted robbery in the

first degree, attempted robbery in the second degree, and two

counts of unlawful imprisonment in the first degree.  The

prosecution alleged that in November, 1998, Petitioner, along

with another man (who was never apprehended and whose identity is

unknown), approached two men, Elvis Suero (an acquaintance of

Petitioner) and Robert Marrero, and asked them for money.[2]  When

they refused, Petitioner and the other perpetrator took the

victims to a nearby apartment building where Petitioner's sister

lived, where Petitioner proceeded to pull a gun and steal money

and a cell phone from Suero, while the other perpetrator

attempted (and failed) to steal a neck chain from Marrero.

Petitioner then ordered Suero into a taxi, rode with him to

Suero's house, took $100 from him, and fled.  Meanwhile, the

other perpetrator took Marrero into Petitioner's sister's

apartment, threatened him with a knife, and then left to find

Petitioner.

Petitioner was released pending trial.  On December 11,

1998, the trial court conducted pretrial hearings, at the

conclusion of which the trial court warned Petitioner that,

should he fail to appear for trial, the trial would proceed in

his absence.[3]  Between that appearance and June 17, 1999,

---

[2] According to the prosecution, Petitioner initially talked with Marrero
outside Marrero's apartment and then forced him inside.

[3] *See People v. Parker,* 57 N.Y.2d 136, 141 (N.Y. 1982) (To effect a
voluntary, knowing and intelligent waiver of the right to be present at trial,
"the defendant must, at a minimum, be informed in some manner of the nature of
(continued...)

Petitioner made six or more court appearances on matters relating to his trial. On Thursday, June 17, 1999, the parties, including Petitioner, appeared in court and counsel informed the judge that they were ready for trial. The judge then told the parties that the case was "on the wheel" and that it would not get a "trial part for about a week."[4] The judge told Petitioner he did not need to appear in court every day, so long as he told his attorney where he could be reached and could appear within an hour and a half of being called. Petitioner replied "It's not a problem." *Parker* warnings were then again administered to Petitioner. In order to allow Petitioner to go to work, his counsel arranged for him to be on "one hour standby," reachable by beeper.

On Monday, June 21, 1999, Petitioner's counsel was notified that the trial would commence that day. Petitioner, however, failed to appear after being paged by his counsel. According to Petitioner's girlfriend at the time, Lisa Horton,[5] Petitioner's counsel also called her and asked her to let Petitioner know that the case had been called for trail. Horton responded that she was estranged from Petitioner and did not know where he was and

---

[3](...continued)
the right to be present at trial and the consequences of failing to appear for trial.").

[4] The judge also said "You will probably not get a part today or tomorrow."

[5] Horton is now Petitioner's wife.

she would not pass along a message to him.[6] Horton Affidavit, §§ 5-6.  On the following day, June 22, the trial court conducted a hearing to determine whether to proceed in Petitioner's absence. Petitioner's counsel informed the court that "all I have is [Petitioner's] beeper number" and that he had again paged Petitioner but Petitioner had not responded.  Detective Joseph Destio of the Queens District Attorney's Office testified that he had attempted to execute a bench warrant for Petitioner on the evening of June 21 and that he had gone to four locations appearing in Petitioner's rap sheet, three in Brooklyn and one in Queens, in an attempt to locate him without success.  At one of the locations, 300A Jefferson Avenue in Brooklyn, Destio spoke with Petitioner's mother and Horton.  They told Destio that Petitioner lived with them at that address, that they did not know his whereabouts, and that he had been awaiting a page to let him know when to return to court.  Horton also told Destio that she would try and find Petitioner and bring him to court as soon as possible.  Susan Aiman, a paralegal for the Queens District Attorney's Office, testified that she had contacted seven area hospitals on the morning of June 22 but was unable to locate Petitioner under the name Jose Maisonet or Jose Blumny, an alias. She also contacted the Nassau Corrections Department, but located no one under those names.  She also called the New York City

---

[6] According to Horton, Petitioner's counsel told her that he did not have time to find Petitioner and that it was up to her to let him know that the case had been called for trial. Horton Affidavit, § 7.  Petitioner's counsel made no reference to this call in discussing his efforts to notify Petitioner with the trial judge.

Department of Corrections and the Queens House of Detention but found no one under Petitioner's NYSID number.[7]  After considering this information, none of which was disputed, the trial judge determined that the search, although "less than . . . absolutely stellar . . . in terms of exhaustive searches," was sufficient and since Petitioner had been told that the case was ready for trial and had been given his *Parker* warnings, concluded that Petitioner had voluntarily absented himself.  The judge also denied Petitioner's counsel's request for a delay in the start of the trial to allow him time to mail a letter to Petitioner's home.

The trial thereafter proceeded and both sides rested on Thursday, June 24, 1999.  Summations were given, and the jury charged, on June 28.  On June 29, 1999, the second day of jury deliberations, Petitioner's counsel alerted the court that Petitioner's mother had called him and let him know that Petitioner had been arrested and detained in Brooklyn on June 25, 1999 for selling a controlled substance.[8]  Petitioner's counsel then moved for a mistrial, which the court denied on the grounds that Petitioner was not arrested until the third day of the trial.  The court however agreed to have the jury postpone further deliberations while the Petitioner was brought to the court from Brooklyn by police officers pursuant to the bench

---

[7] This number is a unique identifier assigned to an individual by the New York State Division of Criminal Justice Services.

[8] A Grand Jury subsequently refused to indict Petitioner on those charges.

warrant.  After Petitioner appeared in court that same day,
Petitioner's counsel again moved for a mistrial due to the fact
that Petitioner wanted to testify and, had he not been arrested,
he could have been present on June 25 or June 28, before closing
arguments.  The court denied the motion, noting that Petitioner
was arrested on Friday, after the parties had rested, and that,
through his "behavior" he had "forfeited his right to testify."
Later that day, the jury found Petitioner guilty of robbery in
the first degree, burglary in the first degree, and robbery in
the second degree, with respect to Suero.  The jury acquitted
Petitioner of robbery charges with respect to Marrero and of
unlawful imprisonment of the two victims.  Petitioner was
sentenced on November 12, 1999.

*State Court Procedural History*

    In January 2002, with the assistance of new counsel,
Petitioner appealed his convictions, arguing that the trial court
erred in refusing the request for a mistrial so that Petitioner
could testify on his own behalf.[9]  On April 14, 2003 the
Appellete Division vacated Petitioner's conviction for first-
degree burglary but otherwise affirmed the trial court's
judgment, holding that the trial court had not abused its

_____

    [9] Maisonet raised two other challenges not relevant to this petition.
First, Maisonet successfully challenged his burglary conviction on the grounds
that the apartment hallway that he entered was not a "dwelling" as required
for a burglary conviction.  Second, Maisonet argued that he was denied a
speedy trial, which the court denied and which he does not pursue in this
petition.

discretion in denying the motion for a mistrial. *People v. Maisonet*, 760 N.Y.S.2d 58, 59 (N.Y. App. Div. 2003).  In so deciding, the court noted that "defendant does not challenge the Supreme Court's determination that he voluntarily and willfully failed to appear in court at the commencement of trial and that the matter could proceed in his absence" but rather only "contends that the Supreme Court erred in denying his motion for a mistrial to afford him an opportunity to testify, when he appeared in court for the first time during jury deliberations." *Id*.  The Court of Appeals denied Petitioner leave to appeal on July 14, 2003.[10]

In November 2004, Petitioner, with assistance of new counsel, filed a motion in state court, pursuant to Criminal Procedure Law (CPL) § 440.10.[11]  In that motion, Petitioner argued that trial counsel provided ineffective assistance by failing to "investigate the whereabouts of the defendant in order to secure his presence during trial."[12]  On January 21, 2005, the

---

[10] Petitioner has not pursued the argument that the trial judge abused his discretion in denying the motion for a mistrial in this application, apparently because the United Stats Supreme Court has held that the right to testify may "bow to accommodate other legitimate interests in the criminal trial process" so long as any restrictions are not "arbitrary or disproportionate to the purposes they are designed to serve." *Rock v. Arkansas*, 483 U.S. 44, 55-56 (1987); *see also Broadhurst v. West,* 2006 WL 89946, at *5 (S.D.N.Y. 2006) ("The interest in orderly procedure is certainly a legitimate interest."); *U.S. v. Jones*, 880 F.2d 55, 59 (8th Cir. 1989); *U.S. v. Byrd,* 403 F.3d 1278, 1288 (11th Cir. 2005) .

[11] C.P.L. § 440.10(1)(h) allows a court to vacate its own judgment if that "judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States."

[12] Petitioner argued that all the parties in the case knew or should have known of his whereabouts, due to his incarceration, and that counsel made
(continued...)

Supreme Court, Queens County denied the motion, ruling that
Petitioner's ineffective assistance claim was procedurally barred
since he was essentially repeating an argument previously
rejected in his 2002 appeal and, to the degree to which the
argument was novel, he had failed to raise it on direct appeal
despite the fact that there was sufficient information contained
in the record, as required by the procedural "default rule" of
CPL § 440.10(2)(c).[13]  On April 15, 2005, the Appellate Division
denied Petitioner leave to appeal.

In April 2006, Petitioner, proceeding *pro-se*, filed a second
§ 440.10 motion, alleging that he had been denied his right to be
present at trial when he was tried in absentia and that he had
not waived his right to be present.[14]  On June 13, 2006 the

---

[12](...continued)
only a "weak attempt" to locate him by calling his "estranged" girlfriend and
asking her to inform Petitioner that he had to come to court.

[13] Under that rule, a court must deny a motion to vacate judgment when

> sufficient facts appear on the record of the proceedings
> underlying the judgment to have permitted, upon appeal from such
> judgment, adequate review of the ground or issue raised upon the
> motion, [but] no such appellate review or determination occurred
> owing to the defendant's unjustifiable failure to take or perfect
> an appeal during the prescribed period or to his unjustifiable
> failure to raise such ground or issue upon an appeal actually
> perfected by him.

CPL § 440.10(2)(c); *See People v. Mower,* 97 N.Y.2d 239, 246-46 (N.Y. 2002)
("Because defendant's claim does not involve factual matters beyond the scope
of the record or legal issues which could not have been asserted before the
final judgment of conviction, it was not the proper subject of a CPL 440.10
motion."); *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir. 1997).

[14] According to Petitioner, the court failed to determine whether his
absence was willful, considering the fact that he had not been informed of the
trial date, and did not evaluate the difficulty in rescheduling the trial
until Petitioner was located.  Petitioner also noted that no one called his
place of employment after he failed to respond to the beeper.

Supreme Court, Queens County denied this motion as well, concluding that it was also subject to the default rule. Petitioner failed to seek review of this decision by the Appellate Division.

In May 2006, Petitioner filed an application in state court for a writ of error *coram nobis*, alleging ineffective assistance of appellate counsel. In his application, he alleged that appellate counsel had failed to raise in a coherent fashion the issue of Petitioner's right to be present at trial in the 2002 direct appeal of Petitioner's conviction. On October 10, 2006, the Appellate Division denied the petition, holding that Petitioner failed to establish denial of his right to effective assistance of appellate counsel. On November 26, 2006, Petitioner filed for leave to appeal to the Court of Appeals, which the Court of Appeals denied.

*Federal Court Procedural History*

Petitioner originally filed this petition on July 9, 2004, asserting ineffective assistance of trial and appellate counsel and denial of due process. On October 7, 2004, I dismissed the petition without prejudice to allow Petitioner time to exhaust his claims in state court. Following Petitioner's efforts in state court in November, 2004, and April and May, 2006, to overturn his conviction (discussed above), the petition was argued before the undersigned on June 12, 2007.

**Discussion**

Reading Petitioner's submissions liberally, there appear to be four claims asserted: (1) ineffective assistance of trial counsel for failure to locate Petitioner; (2) ineffective assistance of trial counsel for failure to argue at trial that Petitioner had not waived his right to be present at trial; (3) ineffective assistance of appellate counsel for failure to argue that Petitioner had not waived his right to be present at trial; and (4) denial of due process by the trial court in determining that Petitioner was willfully absent from trial.

<u>Exhaustion</u>

Section 2254(c) requires that individuals in state custody exhaust their remedies in state court before a federal court may grant an application for habeas corpus.[15] "Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had." *Daye v. Attorney General of State of N.Y.*, 696 F.2d 186, 190 n.3 (2d

---

[15] The statute reads, in relevant part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . (A) the applicant has exhausted the remedies available in the courts of the State.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

18 U.S.C. § 2254(b) and (c).

Cir. 1982). Claims (1) and (3) above have both been exhausted.[16]
However, claim (2) is raised for the first time in these papers,
and Petitioner did not seek leave to appeal claim (4) after it
was denied by the trial court in June 2006. Accordingly, these
claims are unexhausted. Normally, 'mixed petitions' containing
exhausted and unexhausted claims must be dismissed. *See Rose v.
Lundy*, 455 U.S. 509 (1982). However, as I noted in *DeVito v.
Racette*, 1992 WL 198150 (E.D.N.Y. 1992), pursuant to the Supreme
Court's ruling in *Coleman v. Thompson,* where it is clear that a
claim before a federal court is procedurally barred in state
court, it would be wasteful of judicial resources to require the
Petitioner to return to state court and argue the claim when the
outcome is a foregone conclusion. 501 U.S. 722, 735 n.1 (1991);
*see also Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir. 1997) ("For
exhaustion purposes, a federal habeas court need not require that
a federal claim be presented to a state court if it is clear that
the state court would hold the claim procedurally barred.")
(internal quotations omitted). In that situation, federal courts
may "declare as a matter of state law that an appeal from the
denial of his original Section 440.10 motion is unavailable."
*Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990). Here, the two
unexhausted claims are procedurally barred in state court. With

---

[16] Petitioner exhausted claim (1) when the Appellate Division denied him
leave to appeal that claim in April 2005. *See Desrosiers v. Phillips,* 2006 WL
2092481, at *9 (E.D.N.Y. 2006) ("Petitioner has exhausted his claim at the
state level, since the Appellate Division denied him leave to appeal regarding
the 440.10 motion."). Petitioner exhausted claim (3) when the Court of
Appeals denied him leave to appeal that claim in November 2006.

regards to claim (2), NYCPL § 440.10 allows a defendant to collaterally attack his conviction, but, as previously noted, the default rule of § 440.10(2)(c) bars such a constitutional attack where the defendant unjustifiably failed to make the argument on direct appeal despite a sufficient record. Here, although the evidence of trial counsel's allegedly deficient performance was available on the trial record, Petitioner failed to raise the claim on direct appeal and it is accordingly barred.[17] As for claim (4), which was denied by the trial court in June 2006, the thirty-day time limit set out in CPL § 460.10(4)(a) for filing of leave to appeal has expired, barring Petitioner from pursuing any further argument on that claim in state court.[18] *See DeVito*, 1992 WL 198150 at *3 (Where Petitioner "did not seek leave to appeal within the thirty days . . . . a state court would in all likelihood deny any application for leave to appeal brought at this time."). Therefore, since all the claims are either actually exhausted or are properly deemed exhausted, I proceed to

---

[17] As discussed above, the state court found other claims barred for the same reason. Although such a failure might be excused when it is due to ineffective assistance of counsel, Petitioner nowhere argues that his appellate counsel should have raised such a claim. *See People v. Cuadrado,* 830 N.Y.S.2d 65, 74 (N.Y. App. Div. 2007). Indeed, as discussed below, this claim clearly has no merit and therefore the failure of his appellate counsel to raise it cannot be attributed to deficient performance. *See Andreu v. U.S.,* 2001 WL 1488190, at *5 (S.D.N.Y. 2001) (Counsel "cannot be faulted with failing to raise futile arguments.").

[18] There are exceptions in § 460.10(1), none of which apply in this case.

evaluate their merits.[19]

## I. Claim (1): Ineffective Assistance of Trial Counsel #1

Petitioner argues that trial counsel rendered ineffective assistance by failing to take reasonable steps to locate Petitioner and inform him that the trial was set to begin. According to Petitioner, after paging Petitioner, counsel made only "one weak attempt" to locate him, by calling his girlfriend, who told him that she was estranged from Petitioner and did not know his whereabouts. According to Petitioner, both his counsel and the prosecution knew of his employment address and phone number, as well as his home address and phone number, but counsel failed to make any attempt to contact him at those locations.

### A. Procedural Bar

On January 21, 2005, the state court ruled on Petitioner's § 440.10 motion, in which Petitioner alleged that he received ineffective assistance of counsel because his counsel "failed to take the appropriate and reasonable steps necessary to secure [his] presence" at trial. The court found that "[a] full record

---

[19] As I noted in *DeVito*,

> [t]his decision does not necessarily prevent petitioner from seeking further relief from the state courts. Where a federal court concludes that a claim is procedurally defaulted according state law, it does so only for limited purpose of determining a question of federal law – namely, whether a remedy in state court is 'unavailable' within the meaning of [28 U.S.C.] § 2254(c).

*DeVito*, 1992 WL 198150 at *5 (internal quotations omitted).

of defense counsel's actions in notifying [Petitioner] with respect to trial and attempting to locate [Petitioner] are contained in the minutes of the <u>Parker</u> hearing conducted in this matter," but Petitioner failed to raise the issue on his earlier direct appeal.  Accordingly, citing to the default rule of CPL § 440.10(2)(c), the court held that the motion was procedurally barred.

When a petitioner "defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In this case, the state court ruling was based on just such an adequate and independent state procedural ground, namely the default rule of § 440.10(2)(c). *See Sweet v. Bennett,* 353 F.3d 135, 141 (2d Cir. 2003) (default rule of § 440.10 is an adequate and independent state law ground barring federal habeas review of claims); *Levine v. Commissioner of Correctional Services,* 44 F.3d 121, 126 (2d Cir. 1995).  Therefore, the claim is barred unless Petitioner can demonstrate either cause and prejudice or a fundamental miscarriage of justice.[20]

Cause may be demonstrated with "a showing that the factual

---

[20] Though Respondent raised this issue in its briefs, Petitioner has failed to respond to it.

or legal basis for a claim was not reasonably available to counsel, ... or that 'some interference by state officials' made compliance impracticable, ... [or that] the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). The only possible 'cause' discernable from the record is appellate counsel's failure to raise this issue on direct appeal. However, Petitioner does not argue that appellate counsel erred by failing to raise this claim on appeal.[21] Rather, Petitioner, in the present application and in previous state court filings, argues only that appellate counsel was ineffective in failing to coherently raise the "strongest issue", namely Petitioner's "right to be present at trial." Petitioner's Reply Brief, p.9.[22] Accordingly, no cause has been alleged for Petitioner's default. Moreover, even if Petitioner had alleged that his appellate counsel's failure to raise the issue was the 'cause,' there is no prejudice since, as discussed below, the claim of ineffective assistance of trial counsel for failing to locate Petitioner fails on the merits. *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (To

---

[21] *See Murray v. Carrier,* 477 U.S. 478, 488-89 (1986) ("[E]xhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Holland v. Irvin,* 45 Fed.Appx. 17, 19-20 (2d Cir. 2002) ("Although the petitioner may establish cause by demonstrating the ineffectiveness of his counsel, he must first present the ineffective assistance contention to the state courts following the rules of those courts as an ineffective assistance claim is itself an independent constitutional claim.")

[22] As discussed below, there is no merit to the claim that trial counsel was ineffective in failing to locate Petitioner and therefore the decision of appellate counsel to raise that issue cannot be attributed to deficient performance.

establish prejudice, the alleged error must work toward petitioner's "actual and substantial disadvantage.").

To find that there has been a fundamental miscarriage of justice, a court must determine that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002). "To establish actual innocence, petitioner must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. [A]ctual innocence means factual innocence, not mere legal insufficiency." *Id*. (internal citations and quotations omitted). Petitioner notes that he was acquitted of certain charges and argues that, had he been allowed to confront witnesses and testify himself, the jury would have acquitted him of all charges. However, nowhere does Petitioner state what facts he would have testified to which would have altered the jury's determination. Since Petitioner has not presented even an outline of his testimony or other potential contribution at trial, concluding that his presence would have altered the outcome is speculation. *See Washington v. Delo,* 51 F.3d 756, 761 (8th Cir. 1995) (Where "[n]o new evidence has been provided in support of [petitioner's] assertions . . . they therefore remain nothing more than naked speculation," and are insufficient for a finding of a fundamental miscarriage of justice). Petitioner has, in short, failed to demonstrate that his presence at the trial would have made it more likely than not that he would have been acquitted.

*B. Merits of Claim/Strickland Standard*

Assuming, *arguendo*, that Petitioner's claim is not barred, the claim also fails on the merits. A petitioner who alleges a violation of his Sixth Amendment rights due to ineffective assistance of counsel must demonstrate that (1) counsel's performance was deficient by "showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment," and (2) that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In support of such an argument, a petitioner must identify counsel's acts or omissions that the petitioner believes were not the result of "reasonable professional judgment." *Id*. at 690. In making the objective determination as to whether counsel's assistance was professionally competent, courts adopt a strong presumption that "counsel's conduct falls within the wide range of professional assistance." *Id*. at 689. It is not enough that counsel simply makes a professionally unreasonable error, but rather the error must also prejudice the defendant by creating a "reasonable probability" that, but for counsel's unprofessional conduct, the result would have been different. *Id*. at 694.[23]

Trial counsel's alleged error in this case was his failure

---

[23] Contrary to Petitioner's assertion, this is not a case in which prejudice is "presumed." Those cases are limited to situations in which "counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692.

to use "reasonable" efforts to locate Petitioner prior to trial.
However, the record demonstrates the contrary. Petitioner
contends that counsel should have gone to or called his place of
employment.[24]  However, despite Petitioner's assertion in his
briefs that his counsel and the prosecution knew where he worked,
Petitioner has offered no evidence to the effect.  The fact that
Petitioner's counsel was aware that Petitioner had a job fails to
demonstrate that counsel knew where to reach him;[25] in fact, the
record evidences the opposite conclusion, as counsel informed the
trial judge, after paging Petitioner as planned, that "all I have
is a beeper number." Trial Transcript, P.2.  Petitioner also
argues that his counsel should have called or visited his home.
However, Petitioner's counsel was aware of the unsuccessful
effort to execute a bench warrant on June 21 at known addresses
claimed by Petitioner, including his residence in Brooklyn.[26]
The record demonstrates that Petitioner's counsel vigorously
argued that Petitioner was not willfully absent, asking the judge
to delay the beginning of the trial.

Even if counsel's performance had been deficient, Petitioner

---

[24] As noted, Petitioner's initial argument that counsel should have
looked for him in the Brooklyn jail misses the mark since he was not arrested
until after the trial began.

[25] It was only after oral arguments on this application that Petitioner,
by filing a post-argument affidavit from his employer, for the first time
provided any verification of his employment on the dates in question.
However, in Petitioner's affidavit, he never claims that he discussed his
place of employment with his attorney.

[26] Petitioner has not alleged that he lived in some other location which
counsel was or should have been aware of.

has failed to demonstrate that, but for counsel's allegedly deficient performance, there is a reasonable probability that the result would have been different. Petitioner nowhere alleges that he did not receive his counsel's calls to his pager. Nor does he content that the pager network was not functioning properly. Petitioner also fails to allege that, on the days in question, he actually would have been found at home[27] or at work[28] had counsel called him there. Moreover, as noted above, Petitioner has failed to demonstrate how, had he appeared at trial to confront witnesses and testify (as he argues he wanted to) the outcome would have been any different. *See Bridges v. Cason,* 539 U.S. 510, 534 (2006) ("Even if [petitioner] can show that trial counsel's actions deprived him of his Confrontation Clause rights . . . [he] still must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal citations and quotations omitted); *U.S. v. Wilson,* 2000 WL 778021, at *3 (2d Cir. 2000) ("[A]ssuming *arguendo* that appellant was not so advised [about his right to testify], he has made no showing that his failure to testify somehow prejudiced his defense."); *U.S. v. Betancur,* 84 Fed.Appx. 131, 135 (2d Cir. 2004) (Finding no prejudice where petitioner, who was not permitted to testify by

---

[27] According to the detective's testimony at trial, Petitioner's mother indicated that he did not stay at the Jefferson Street address every night.

[28] To this day, Petitioner has still not verified that he was actually at his job at the time the case was called to trial, or that there was a phone by means of which he could be reached.

her attorney, "made no attempt to explain how the substance of
her testimony could have changed the outcome of her trial.").

## II. Claim (2): Ineffective Assistance of Trial Counsel #2

Read liberally, Petitioner's reply brief contends, for the
first time, that his trial counsel was also ineffective for
failing to argue that Petitioner could be located and brought to
trial within a reasonable period of time.

*A. Procedural Bar*

As noted previously, this claim is procedurally barred on
state law grounds by § 440.10(2)(c) for failure to raise the
issue on direct appeal.  To overcome such a bar, Petitioner must
demonstrate cause and prejudice or a fundamental miscarriage of
justice, as discussed above.  However, as with claim (1),
Petitioner has not set forth any cause for failing to raise the
issue on direct appeal.  He has not alleged that his appellate
counsel was deficient in failing to raise the claim.  Nor has he
alleged facts that would lead a court to conclude that there was
a fundamental miscarriage of justice, or that the outcome of the
trial would have been different if the trial had been delayed and
he had come to court and testified.

*B. Merits of Claim*

Even if Petitioner could demonstrate cause and prejudice or
a fundamental miscarriage of justice, this claim of ineffective

assistance fails as well on the merits.  First, the record
demonstrates that counsel argued vigorously on Petitioner's
behalf that additional investigation was needed and that the
court should not find Petitioner willfully absent from the
proceedings, and Petitioner has failed to allege any specific
failure of counsel.  Second, as in claim (1), Petitioner has
demonstrated no prejudice that resulted from any deficient
performance - there is no evidence that he would have come to
trial even if more time had been granted, nor has he demonstrated
how his presence would have impacted the outcome.  Accordingly,
he has failed to demonstrate ineffective assistance of trial
counsel on this claim as well.

## III. Claim (3): Ineffective Assistance of Appellate Counsel

Petitioner alleges that on direct appeal his appellate
counsel failed to raise the "strongest issue", namely
Petitioner's due process "right to be present at trial."[29]  That
argument was rejected by the Appellate Division on the merits.

Where an issue has been decided "on the merits" by a state
court, § 2254 prohibits federal courts from providing relief
"unless the adjudication of the claim . . . resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by

---

[29] A defendant has a right to be present at trial, though that right can
be waived, either expressly or as "implied from the defendant's conduct." *U.S.
v. Nichols*, 56 F.3d 403, 416 (2d Cir. 1995).

the Supreme Court of the United States." 18 U.S.C. § 2254(d).[30]

A state court decision is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Here, the Appellate Division, in finding that Petitioner failed to establish that his appellate counsel provided ineffective assistance, cited *Jones v. Barnes,* 463 U.S. 745, 754 (1983), in which the Supreme Court ruled that, in evaluating the arguments made by appellate counsel, courts are not required to "second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." *Id*. at 754.[31] Clearly, the state court's conclusion that counsel's decision not to raise certain issues did not constitute ineffective assistance is not opposite to that of Supreme Court precedent. *See Clark v. Stinson,* 214 F.3d 315, 322 (2d Cir. 2000) ("We note that the Appellate Division cited

---

[30] The statute also provides that a court may grant a habeas petition if the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 18 U.S.C. § 2254(d)(2). However, with regards to the ineffective assistance of appellate counsel claim, Petitioner has alleged no factual errors but rather only disputes the legal conclusions of the state court. Therefore, this subsection is inapplicable. See *Serrano v. Fischer*, 412 F.3d 292, 297 (2d Cir. 2005) (Where "petitioner does not challenge the state courts' factual findings . . . [but rather] challenges only the courts' conclusions of law . . . Subsection (2) of § 2254(d) is . . . inapplicable.").

[31] "Experienced advocates have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 746.

*Jones* [regarding appellate counsel's arguments] in its summary disposition denying [Petitioner's] *coram nobis* petition, and accordingly invoked the correct legal principle at issue.").

"Under the 'unreasonable application' clause, a federal habeas court may grant an application if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Under this standard, "a federal court may not issue the writ simply because that court concludes on its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. "Some increment of incorrectness beyond error is required." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). "[H]owever . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id*. (internal quotations omitted).

As previously indicated, the legal question at issue is whether an attorney's decision to forgo non-frivolous arguments on appeal constitutes deficient performance. While counsel need not raise all non-frivolous arguments on appeal, a petitioner can demonstrate deficient performance where counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994). In the present case, Petitioner had

been warned about the consequences of not showing up for trial and was informed that the case was ready for trial and would begin shortly. On the date of trial, he failed to respond to pages, even though that was the system of communication he established with his attorney only four days before, and the judge adjourned the trial for a day and issued a bench warrant. Petitioner's counsel then paged Petitioner again, while the government searched for Petitioner in jails, hospitals and his home that night. These searches failed to discover Petitioner, but did reveal that he had not been home since June 17 (four days earlier) and that Petitioner's girlfriend would try and get in touch with him so that he would be in court the next day.[32] Evaluating this information the following day, the trial judge held that the search was adequate to conclude that Petitioner had voluntarily absented himself from the trial. Although Petitioner was not aware of the specific date of trial, there was significant evidence from which the judge could determine that Petitioner was willfully absenting himself by failing to respond to pages and by not staying at his home. *See U.S. v. Mera,* 921 F.2d 18, 21 (2d Cir. 1990) (Where a court, on the basis of the underlying facts, determines that the defendant has voluntarily absented himself from trial, it may conclude that the defendant has waived his right to be present even where defendant was not

---

[32] Petitioner's girlfriend and mother also informed the detective the Petitioner told them he was waiting for a page to go back to court. The fact that he was waiting for such a page indicates that he was on alert but does not establish that he necessarily was planning on returning to court if he did receive such a page.

aware of the trial date).  Accordingly, in light of the strong
presumption of appellate counsel's competency and the record of
the trial which he had before him, the argument that the trial
judge denied Petitioner his due process rights by finding that he
had voluntarily absented himself cannot be said to be an
obviously strong argument which Petitioner's appellate counsel
should have made.[33][34] *See People v. Sumner,* 681 N.Y.S.2d 611, 612
(N.Y. App. Div. 1998) (Courts in New York do not "abuse[] [their]
discretion by proceeding with the trial in absentia [where] a
further adjournment . . . would not likely result in locating
defendant within a reasonable period of time."); *see also People
v. Lamb,* 653 N.Y.S.2d 395, 396 (N.Y. App. Div. 1997) (Defendant
could be found to have voluntarily waived his right to be present
at trial if he was given *Parker* warning and told that the trial
could occur on 24 hours notice); *but see People v. Edmonds*, 542
N.Y.S.2d 804, 806 (N.Y. App. Div. 1989) (Fact that defendant was
not informed of the trial date a factor in determining that he
was not voluntarily absent).  More to the point, the appellate
court's determination that the failure to raise such an argument
on the facts of this case does not constitute ineffective

---

[33] Petitioner states that his counsel should have argued that the
investigation failed because no one contacted his employer.  However, as noted
above, there is no evidence that anyone involved in the trial knew that
information and, accordingly, it cannot be said it was an obvious or strong
argument in his favor.

[34] This conclusion is supported by the fact that counsel put forth two
other strong arguments, one regarding Petitioner's constitutional right to
testify in his own defense and one regarding the failure of the prosecution to
prove the elements of burglary.  The appellate court found in favor of
Petitioner on the burglary charge and overturned the verdict on that count.

assistance of counsel cannot be said to be an unreasonable application of the law. *See Clark v. Stinson,* 214 F.3d 315, 322 (2d Cir. 2000) ("Because we do not find it obvious on this record that a constitutional violation occurred . . . we likewise find the decision of the New York court [that counsel's failure to make such an argument was not ineffective assistance] to be a reasonable application of federal decisional law as set forth by the Supreme Court.").[35]

## IV. Claim (4): Denial of Due Process #1

Reading Petitioner's application liberally, he has also alleged that the trial court's decision to declare him willfully absent and to begin the trial without him present denied him his right to due process of law. As noted above, this claim was raised for the first time in April 2006 and the state court determined it was procedurally barred under state law, and thus 'cause and prejudice' or fundamental miscarriage of justice tests apply.

---

[35] In *U.S. v. Tortora*, 464 F.2d 1202 (2nd Cir.1972), the Second Circuit held that to find that a defendant knowingly and voluntarily waived his right to be present at trial, "the Court must then find, prior to exercising its discretion to proceed in absentia, that the public interest clearly outweighs that of the voluntarily absent defendant." 464 F.2d at 1210. Petitioner, in arguing that the trial court failed to properly exercise its discretion in finding him voluntarily absent, did not allege in his state court application for ineffective assistance of appellate counsel, nor does he allege in his application before this court, that appellate counsel should specifically have challenged the lack of such an explicit finding on the record, apparently because there is no Supreme Court precedent requiring such an explicit finding and because it is evident from the record that the public interest in a speedy resolution to this matter outweighed the interests of a Petitioner who was absent, where reasonable efforts had been made to locate the Petitioner and where there was no indication that additional efforts would help find him.

In this case, Petitioner has stated a 'cause' for his failure to raise the claim at an earlier time, namely his appellate counsel's ineffective assistance, described in claim (3). However, that 'cause' must rise to the level of constitutionally ineffective assistance under *Strickland*. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). As already explained with regards to claim (3), there was no ineffective assistance of counsel in this case because, as the appellate court concluded, counsel's performance was not deficient. In addition, for the same reasons discussed above, Petitioner has failed to demonstrate any fundamental misarrange of justice since he has not provided any reason to believe that his presence at trial would have led to a different outcome.

## Conclusion

For the reasons set forth above, Petitioner's application is denied and Petitioner is denied a certificate of appealability because he has not made "a substantial showing of the denial of a constitutional right." *Reyes v. Keane*, 90 F.3d 676, 680 (2d Cir. 1996). The Clerk is directed to transmit a filed copy of the within to the parties.

SO ORDERED.

Dated :  Brooklyn, New York
         July 10, 2007

                    By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                         United States District Judge